IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PINNACLE BENEFITS GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:13CV186 |
| | ) |
| AMERICAN REPUBLIC INSURANCE COMPANY, AMERICAN ENTERPRISE GROUP, INC., and WORLD INSURANCE COMPANY, | ) ) ) ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Before the court is a motion to dismiss the complaint and to compel arbitration filed by Defendants American Republic Insurance Company ("ARIC"), American Enterprise Group, Inc. ("AEG"), and World Insurance Company ("WIC") (collectively "Defendants"). (Doc. 5.) Plaintiff Pinnacle Benefits Group, LLC ("PBG"), opposes the motion in part, arguing that the court should allow its tort claims to proceed to litigation and stay the remaining contract claims while they are arbitrated. (Doc. 7.) For the reasons set forth below, Defendants' motion will be granted, all of PBG's claims will be ordered to arbitration, and the complaint will be dismissed.

I. **BACKGROUND**

The complaint (Doc. 1), considered in the light most

favorable to PBG, alleges the following:

PBG, a limited liability company with its principal place of business in Winston-Salem, North Carolina, provides health insurance products and, in doing so, maintains contractual relationships with a network of insurance agents. ARIC is a health insurance underwriter and distributor with its principal place of business in Des Moines, Iowa. (Doc. 1-1 at 2; Doc. 1 ¶ 6.) On November 15, 2002, PBG and ARIC entered into a Marketing Agreement (the "Agreement"), whereby PBG was permitted to "market and service jointly-designed health insurance products underwritten by ARIC." (Doc. 1 ¶ 12.) At some point in 2004, ARIC and WIC merged and came under the control of AEG. (Id. ¶ 13.) PBG alleges that, after the merger, Defendants breached the Agreement in several ways.

### A. Systematic lapsing (First Claim)

The Agreement provided that PBG and ARIC were not to "systematically lapse or replace insurance coverage written pursuant to this Agreement." (Doc. 1-1 ¶ 1(f); Doc. 1 ¶ 16.) According to PBG, after ARIC and WIC merged, AEG (as the parent company) wanted to bring the pricing and benefits of ARIC's and WIC's products "under a common set of assumptions and selections." (Doc. 1 ¶ 18.) While PBG assisted AEG in 2009 in creating a Major Medical Revamp Chassis ("Chassis") for PBG's Private Label product underwritten by ARIC, (id. ¶ 19), WIC used

2

the same Chassis in a product it underwrote; AEG then incentivized the lapsing of existing ARIC policies by offering full commissions for agents who sold the new WIC product to existing ARIC policyholders while offering only half commissions to agents who simply rolled over existing ARIC policies (id. ¶¶ 20-21). In addition, AEG began soliciting PBG agents to sell the WIC product to existing ARIC policyholders. (Id. ¶ 22.) PBG alleges that Defendants encouraged such re-writing of policies from March 2009 through July 2010 in violation of the anti-lapsing provision of the Agreement, which significantly affected PBG's business. (Id. ¶¶ 24-25.)

**B. Termination of policies (Second Claim)**

In 2011, AEG decided to leave the market and chose not to renew any of its current policies. (Id. ¶ 28.) According to PBG, AEG contracted with Celtic Insurance Company ("Celtic") to offer guaranteed coverage to those whose polices were not renewed (id. ¶ 30), and in turn AEG and Celtic contracted with Entrecor (another AEG subsidiary) "to exclusively receive and pay commissions for those non-renewed AEG policyholders who 'took up' Celtic on its offer of guaranteed coverage" (id. ¶ 31). PBG, on the other hand, only received commissions through Entrecor at a discounted rate. (Id. ¶ 34.) Many PBG clients were allegedly switched to Celtic before PBG could offer replacement coverage through its own agents. (Id. ¶ 35.)

3

### C. Failure to provide notice (Third Claim)

PBG also alleges that Defendants had a duty to provide 360 days' notice before terminating coverage. (Id. ¶ 47.) PBG contends that, because Defendants did not provide notice of cancellation until, at the earliest, November 19, 2011, they breached their duty under the Agreement and caused damages to PBG. (Id. ¶¶ 49-51.)

### D. Tort Claims (Fifth and Sixth Claims)

In addition to these contract claims based on the Agreement, PBG alleges claims for tortious interference with contractual relations (Fifth Claim) and civil conspiracy (Sixth Claim) under Iowa law. In the tortious interference claim, PBG contends that Defendants interfered with PBG's contractual relationship with its agents by incentivizing customers to switch from ARIC to WIC. (Id. ¶ 60.) The alleged interference caused PBG's agents to stop producing business for PBG and eventually to end their business relationships with it. (Id. ¶ 61.) The civil conspiracy claim is premised on the underlying tortious interference; PBG claims that Defendants conspired to interfere with the contractual relations of PBG and its agents. (Id. ¶¶ 66-68.)

PBG's complaint includes a demand for arbitration on the breach of contract claims. (Id. ¶¶ 53-55 (Fourth Claim).) Defendants have responded with a motion to dismiss the complaint

and contend that all of PBG's claims, including the tort claims, are subject to arbitration under Paragraph 13 of the Agreement (the "arbitration clause"). (Doc. 6 at 6-8.) PBG maintains that, while its breach of contract claims are subject to arbitration, its tort claims are not and should be litigated. (Doc. 7 at 6-8.) Defendants do not assert any additional grounds for dismissal. Therefore, the only issue before the court is whether the arbitration clause applies to PBG's tort claims.

## II. ANALYSIS

The Agreement's arbitration clause provides, in relevant part:

> 13. Arbitration
>
> In the event said [sic] of a dispute between the Parties, ARIC and PBG agree that such dispute will be resolved by binding arbitration. Such arbitration shall be governed by the Rules then in effect of the American Arbitration Association. . . .

(Doc. 1-1 ¶ 13.) PBG argues, nevertheless, that because the Agreement contains an Iowa choice of law clause (id. ¶ 12(e)), the arbitration clause should be construed to give effect to Iowa Statute § 679A.1(2)(c), which provides that "[u]nless otherwise provided in a separate writing executed by all parties to the contract, any claim sounding in tort whether or not involving a breach of contract" is not covered by an otherwise

valid arbitration clause. PBG contends that the Iowa statute "gives a rule of construction for the plain meaning of arbitration clauses." (Doc. 7 at 8.) Therefore, while PBG concedes that its breach of contract claims are subject to binding arbitration (and indeed demands arbitration on them), it maintains that the plain meaning of the arbitration clause excludes the tort claims, which PBG is entitled to litigate. Defendants argue that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., requires all of PBG's claims to proceed to binding arbitration and that this case should therefore be dismissed. (Doc. 6 at 9–11.)

Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 requires this court to "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Id. § 3. "Notwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709–10 (4th Cir. 2001).[1]

---

[1] Although other circuits have disagreed, see, e.g., Lloyd v. HOVENSA, LLC, 369 F.3d 263, 268–69 (3d Cir. 2004), the Fourth Circuit recently

PBG argues that the plain meaning of the arbitration clause excludes its tort claims against Defendants because the parties intended Iowa's arbitration statute to inform the meaning of the arbitration clause. Therefore, PBG asserts, the arbitration clause should be construed narrowly to exclude tort claims, in accordance with Iowa Statute § 679A.1(2)(c).

While Defendants are correct that the FAA preempts § 679A.1, see Vis v. Am. Family Life Ins. Co. of Columbus, 778 F. Supp. 2d 971, 980 (N.D. Iowa 2011), that determination does not control this case. PBG does not contend that the arbitration clause is invalid because Iowa law prohibits arbitration of tort claims. Rather, its position is that the intention of the parties when drafting the arbitration clause was to exclude tort claims, using § 679A.1 as a guide. "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'" Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). "In this endeavor, 'as with any other contract, the parties' intentions control.'" Id. (quoting Mitsubishi Motors Corp. v. Soler

---

reaffirmed that a district court should dismiss a complaint under section 3 if all of the claims are subject to the arbitration agreement. Aggarao v. MOL Ship Mgmt. Co., Ltd., 675 F.3d 355, 376 (4th Cir. 2012).

Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). Arbitrators possess limited power; they may only decide disputes that the parties submit to their jurisdiction. See id. Therefore, Defendants' preemption argument is misplaced. The issue in this case is whether the parties intended to submit possible tort claims arising out of their commercial relationship to arbitration.

PBG argues that the fact the Agreement included an Iowa choice-of-law clause is evidence that the parties intended to exclude the tort claims from the purview of the arbitration clause. Defendants counter that the arbitration clause is unambiguous and requires the arbitration of all PBG's claims.

Iowa generally applies the four corners doctrine of contract interpretation. See Clinton Phys. Therapy Servs., P.C. v. John Deere Health Care, Inc., 714 N.W.2d 603, 615 (Iowa 2006). "It is a fundamental and well-settled rule that when a contract is not ambiguous, [the court] must simply interpret it as written." Smidt v. Porter, 695 N.W.2d 9, 21 (Iowa 2005). "However, when the language is ambiguous, [the court] must engage in a process of interpretation to search for 'the meanings attached by each party at the time the contract was made.'" Clinton, 714 N.W.2d at 615 (quoting E. Allan Farnsworth, Contracts § 7.9, at 458 (3d ed. 1999)). Iowa courts allow the parties to introduce extrinsic evidence to prove

intent only if the contractual language is ambiguous. Id. Here, PBG's assertion that section 679A.1 should be used as a rule of construction is essentially an attempt to use that statute as extrinsic evidence.[2]

The relevant portion of the arbitration clause is not ambiguous. It provides: "In the event . . . of *a dispute* between the Parties, ARIC and PBG agree that *such dispute* will be resolved by binding arbitration." (Doc. 1-1 ¶ 13 (emphasis added).) The plain language of the clause covers any dispute that may arise between the parties in the course of their contractual relationship. PBG cannot argue that its tort claims against Defendants do not arise out of the contractual relationship; in fact, PBG's tortious interference claim is based on the same conduct that forms the basis of its first breach of contract claim for systematic lapsing.[3]

The presence of the Iowa choice-of-law clause does not change this determination. In Mastrobuono v. Shearson Lehman

---

[2] Both parties have attached to their briefs various correspondence that appears to be part of their settlement discussions that preceded the filing of this lawsuit. (Docs. 6-1, 6-2, 6-3, 7-1, 7-2, 8-1.) As PBG points out, these attachments are inadmissible under Federal Rule of Evidence 408(a) to prove the validity of either party's argument. They are also not authenticated. Therefore, the court will not consider them.

[3] By its nature, the civil conspiracy claim must be related to the tortious interference claim; without an underlying tort, there can be no action for civil conspiracy under Iowa law. See Wright v. Brooke Group, Ltd., 652 N.W.2d 159, 172 (Iowa 2002).

Hutton, Inc., 514 U.S. 52 (1995), the Supreme Court considered whether a choice-of-law clause can preclude an arbitral award of punitive damages that would be proper under federal law. The defendants in that case argued that, because New York law prohibited arbitrators from awarding punitive damages, the New York choice-of-law clause combined with the arbitration clause "expresses an intent to preclude an award of punitive damages." Id. at 62. The court determined that "[a]t most, the choice-of-law clause introduces an ambiguity into [the] arbitration agreement." Id. Further, the Court held that even if the choice-of-law clause did create an ambiguity in the arbitration clause, "when a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Id. (quoting Volt, 489 U.S. at 476); see also Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2866 (2010) (Sotomayor, J., concurring in part and dissenting in part) (describing the operation of the presumption of arbitrability).

To this end, the Fourth Circuit has held that unless the parties have "clearly indicated" otherwise, a dispute will be considered arbitrable under the FAA. Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, 665 F.3d 96, 104

10

(4th Cir. 2012) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944–45 (1995)); see also Aggarao, 675 F.3d at 368–69 (describing the "heavy presumption" in favor of arbitrability when an arbitration clause is broadly worded and noting that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, even where the problem at hand is the construction of the contract language itself" (quoting Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266—67 (4th Cir. 2011); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983) (internal brackets omitted)).

Here, any possible ambiguity created by the Iowa choice-of-law clause must be overcome by the combined force of the clear and broad language of the arbitration clause and the heavy presumption in favor of arbitrability. The Agreement contains no clear statement that the parties intended to give effect to the Iowa arbitration statute. Therefore, Defendants' motion to dismiss and compel arbitration on all PBG's claims will be granted.[4]

### III. CONCLUSION

For the reasons stated, the court finds that the arbitration clause applies to all of PBG's claims in the complaint.

---

[4] PBG's contention that it cannot be forced to arbitrate claims against WIC because WIC was not a party to the Agreement is moot insofar as WIC merged into ARIC in March 2013 and no longer exists as a separate entity. (Doc. 8-1 ¶ 1.)

IT IS THEREFORE ORDERED that Defendants' motion to dismiss and to compel arbitration (Doc. 5) is GRANTED, that the parties proceed to arbitration, and that the complaint be DISMISSED WITHOUT PREJUDICE to the arbitration proceedings.

                                                /s/   Thomas D. Schroeder
                                                United States District Judge

December 31, 2013